THE BOARD OF COMMISSIONERS OF COFFEY COUNTY *et al.* v. C. O. SMITH.

OFFICIAL NEWSPAPER—*Contract by Expiring County Board.* The board of commissioners of a county, about to be dissolved under operation of law, has no power to enter into a contract designating the official newspaper of the county and providing for the county printing for another year, so as to tie the hands of the new board, about to meet and organize, and thereby prevent the new board from selecting the official paper and contracting for county printing for the current year after its organization.

*Error from Coffey District Court.*

ON, and for more than five years prior to, the 18th day of January, 1892, and at this time, *C. O. Smith* was, and is, the publisher of the Burlington *Republican*, a weekly newspaper, printed and published in the city of Burlington, in the county of Coffey, in this state, and having a general circulation therein. On the 7th day of January, 1892, the board of county commissioners of Coffey county, then composed of W. H. Robson, Stephen Baird, and O. R. Tanner, (the last named being the chairman of the board,) at a regular session thereof, entered into a written contract with C. O. Smith to do all the county printing of the county from the 7th day of January, 1892, until the 1st day of January, 1893. At the time of the contract, C. O. Smith executed to the board of county commissioners of Coffey county a bond in the sum of $2,000, conditioned for the faithful performance of his part of the contract, which was accepted and approved by the board,

and filed with the county clerk. On the 13th day of January, 1892, Bowman & Mounts, editors and proprietors of the *Courier*, a weekly newspaper published in the county continuously since the 1st day of January, 1891, and of general circulation therein, made a proposition to the board of county commissioners of the county, then composed of A. S. Vanordstrand, Stephen Baird, and W. H. Robson, (the last named being chairman of the board,) and who were then in regular session, as such board, at the office of the county clerk of the county, to do the county printing for the year ending on the second Monday of January, 1893, for 5 per cent. of the price C. O. Smith was to receive under his contract. The board, by a vote of a majority of its members, A. S. Vanordstrand and Stephen Baird, accepted the proposition of Bowman & Mounts, and ordered the county printing for the county to be let to them. The order of the board was, at the same time, reduced to writing and spread upon the journal by the county clerk. Bowman & Mounts then placed at the head of their newspaper, the *Courier*, the words " official county paper," and otherwise advertised that the *Courier* was the official newspaper of Coffey county.

On the 18th day of January, 1892, C. O. Smith commenced this action in the district court of Coffey county to enjoin the board of county commissioners from entering into, or carrying out, any contract with Bowman & Mounts to do the county printing, and to enjoin them from placing at the head of the *Courier* the words "official county paper," and from otherwise advertising their newspaper as the official newspaper of the county. On the same day, the district court granted a temporary injunction in the action as prayed for. On the 22d day of January, 1892, the defendants filed their motion to vacate and dissolve the temporary injunction, on the grounds that the plaintiff's petition did not state facts sufficient to authorize the issuing of the temporary injunction, and that the facts alleged therein were not true, and also that plaintiff had an adequate remedy at law. The motion was, on the 27th day of January, 1892, heard by the court, upon the petition

and affidavits. After the hearing and argument thereof, the court took the same under advisement until the 6th day of February, 1892, at which time C. O. Smith asked and obtained leave to file, and did file, his amended petition. Immediately after the filing of the same, the court overruled the motion, to which ruling the defendants at the time excepted. On the 25th day of February, 1892, the board of county commissioners and Bowman & Mounts each filed in the action their separate demurrers to the amended petition, and each alleged as the grounds of demurrer that the amended petition did not state facts sufficient to constitute any cause of action against them, nor to entitle the plaintiff to the relief prayed for, nor to any relief whatever, as against the defendants. On the 4th day of March, 1892, the separate demurrers were each taken up and heard before the court, and overruled, to which ruling the defendants excepted at the time. The defendants declined further to plead, and each elected to stand upon their respective demurrers; whereupon, on motion of the plaintiff, C. O. Smith, the court rendered judgment against the defendants, ordering the temporary injunction to be made perpetual, and enjoining the defendants and the board of county commissioners from ordering or directing any of the county printing to be done by Bowman & Mounts or by the *Courier* during the year 1892, and restraining Bowman & Mounts from advertising their newspaper as the official paper of the county; and from displaying at the head of the newspaper the words "official county paper" during the year 1892, and perpetually enjoining the same from paying Bowman & Mounts any money or county orders for any printing or advertising for the county during 1892. Bowman & Mounts and the board of county commissioners of Coffey county excepted to the judgment, and bring the case here.

*M. M. Bowman*, and *E. N. Connal*, for plaintiffs in error:

We submit that the county board cannot by contract lawfully designate a newspaper to do all the county printing for a term extending beyond the organized existence of such

board, and thereby bind the subsequent board. See *Shelden v. Comm'rs of Butler Co.*, 48 Kas. 356, and cases therein cited.

*Redmond & Junkins*, and *Manchester & Allen*, for defendant in error:

The question involved in *Shelden v. Comm'rs of Butler Co.*, 48 Kas. 356, was whether the board of county commissioners could, just before a reorganization of the board, let a contract to do the county printing for a period of two years. This court in that case decided that it could not. The question in this case is, Can the board of county commissioners, just before a reorganization of the board, let a contract to do the county printing for a period of one year, when all of the members of the board consent to such agreement and join therein? In the case of *Shelden v. Comm'rs of Butler Co.*, supra, the facts show that the period of the contract extended beyond the official life, or term, of a majority of those who were members of the board at the time of making the contract, and that the contract had been executed, before the same was attacked, to a point of time beyond the official term of a majority of those composing the board at the time of making the contract. In this case, the period of the contract did not extend beyond the official life, or term, of a majority of those who composed the board at the time the contract was made. During all the period over which the contract now involved was to extend, a majority of those who consented and agreed to that contract will be members of that board; at least during all that time their official term will extend. It will be seen, therefore, that the two cases are materially different.

In this case the principal question is, Can a board of county commissioners make a binding contract with a printer to do the county printing for one year, when that year, or any part of it, extends beyond the time when there must be a reorganization of the board of county commissioners, by reason of a new member coming into the board of commissioners?

23—50 KAS.

It must, therefore, follow that a decision in the one case cannot be held to be decisive of the other.

The case of *Comm'rs of Harper Co. v. The State, ex rel.*, 47 Kas. 283 (27 Pac. Rep. 997), is much in point. There this court held valid a contract for county printing made January 9, 1891, to extend for a period of one year from that date. There, as in this case, it was contended that the contract was void for want of authority on the part of the board of commissioners to make the same. The question there, as here, was raised on a general demurrer to the petition. It does seem to us that it is decisive of this case.

See, also, *Comm'rs of Pulaski Co. v. Shields*, 29 N. E. Rep. 385; *School Town of Milford v. Ziegler*, 27 id. 303; *Tappan v. Carrollton School District*, 7 N. W. Rep. 73.

The opinion of the court was delivered by

HORTON, C. J. : It was decided in *Shelden v. Comm'rs of Butler Co.*, 48 Kas. 356, that—

" On the second Monday of January after each general election at which a commissioner has been elected, the board of county commissioners as an organized body is dissolved, and the office of chairman is vacant, and, before the commissioners can transact any county business other than to elect a chairman, or fill a vacancy in the office of a commissioner, the board must be again organized, and the hands of such new board or organization, as to the designation of the official newspaper of the county, are not tied by a prior order of the preceding board of county commissioners."

It logically follows, from the opinion filed in that case, that the board of county commissioners of Coffey county, which was about to be dissolved under operation of law, did not have authority, on the 7th day of January, 1892, to enter into a contract with C. O. Smith concerning the official newspaper of the county and the county printing thereof for another year, so as to tie the hands of the new board of county commissioners, which met and organized on the second Monday of January of that year, being only four days

after the 7th of January, the date of the contract complained of.

It is a matter of general publicity, that in the election of county commissioners the selection of the official newspaper of the county enters more or less into the contest. The views of the candidates for commissioners as to what newspaper shall be designated the official paper of the county often determine the result. When the result of the election is legally declared, the will of the majority ought to be promptly and cheerfully acquiesced in. It does not seem fair or just for the old board, just as it is going out of office, to forestall the new board in the designation of the official newspaper of the county. There are no good reasons why the old board should be permitted to tie the hands of the new board in such a matter, and there are manifold and manifest reasons why they should not have that power. The same reasons for limiting contracts for general county expenditures do not exist as in designating the official paper of the county. We repeat what we said in *Shelden v. Comm'rs of Butler County,* supra: "To avoid complications or other troubles, the designation of the official newspaper should be made as early in each January, after the board is organized, as is convenient for action to be had."

In the case of *Comm'rs of Harper Co. v. The State, ex rel.,* 47 Kas. 283, (27 Pac. 997,) the only material question decided was, that a board of county commissioners had the power, in the absence of fraud or collusion, to make a contract to pay for the county printing at legal rates, although other parties offered to do the printing at less than legal rates.

The judgment will be reversed, and the cause remanded, with direction to the court below to sustain the demurrer filed to the petition.

All the Justices concurring.