No. 29,514.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE et al., *Defendants*.

(293 Pac. 525.)

Opinion filed December 6, 1930.

*William A. Smith,* attorney-general, and *Roland Boynton,* assistant attorney-general, for the plaintiff.

*Lewis R. Gates,* county counselor, of Kansas City, *Thomas Amory Lee, John F. Kaster* and *Ralph W. Oman,* all of Topeka, for the defendants.

*C. I. Martin, W. R. McLean, Wilder S. Metcalf, W. McD. Rowan, P. M. Hoisington, William J. Watson* and *Charles H. Browne,* constituting the state military board, as *amici curiæ.*

The opinion of the court was delivered by

MARSHALL, J.: In this action the state questions the authority of the board of county commissioners of Wyandotte county to enter into a contract with the citizens military committee of that county providing for the payment to that committee of the sum of $2,000 per year for a period of fifteen years to be used to pay rent on an armory to be built by the citizens military committee in Kansas City.

The board of county commissioners are attempting to act under R. S. 48-308 and 48-309, which read:

"That every city and county in the state of Kansas now having or that may hereafter have a national guard organization within its boundaries is hereby authorized and empowered to render such financial assistance as it may deem wise and patriotic to such national guard organization, either by donating lands or building, or donating the use of lands or buildings, or by contributing money to their equipment and maintenance."

"That the governing body or board of county commissioners of every city and county in this state is hereby authorized and empowered to make an annual expenditure in cash for furnishing equipment and maintenance to a national guard organization within its boundaries in a sum not to exceed two thousand ($2,000) dollars."

The argument of the state is that the present board of county commissioners does not have authority to bind its successors for a term of fifteen years. The state argues that the decisions of this court heretofore rendered restrict the actions of the board of county commissioners in matters such as this to one year; that payments to be made under sections 48-308 and 48-309 must be made annually; and that obligations cannot be incurred for a longer period of time.

The state cites *Sheldon v. Comm'rs of Butler Co.*, 48 Kan. 356, 29 Pac. 759, and *Comm'rs of Coffey Co. v. Smith*, 50 Kan. 350, 32 Pac. 30. In the latter case the court said:

"The board of commissioners of a county, about to be dissolved under operation of law, has no power to enter into a contract designating the official newspaper of the county and providing for the county printing for another year, so as to tie the hands of the new board, about to meet and organize, and thereby prevent the new board from selecting the official paper and contracting for county printing for the current year after its organization." (Syl.)

Both of those cases arose under the statute giving to the county commissioners power to designate the county printer. That statute is R. S. 19-229 and reads:

"The boards of county commissioners of the several counties of this state shall have exclusive control of all expenditues accruing, either in the publication of delinquent tax lists, treasurer's notices, county printing, or any other county expenditures."

If a board of county commissioners is to have control of the expenditures for county printing it cannot have its hands tied by a contract made by a previous board of county commissioners. This control is a continuing one and must be exercised by each board as it deems best.

The state also cites *National Bank v. Peck*, 43 Kan. 643, 23 Pac. 1077, where this court said:

"No authority is given by chapter 189 of the Laws of 1889, to the board of county commissioners, to designate a bank or banks for the deposit of the public moneys for a definite period of time; nor can the board make any order, or make any contract .with the depository that will prevent the designation of a different depository whenever the board in its discretion determines that the public interest will be best subserved by such a change." (Syl.)

That decision was rendered .under section 1 of chapter 189 of the Laws of 1889, which, so far as material, reads as follows:

"That in all counties having a population of less than twenty-five thousand inhabitants, the county treasurer shall deposit daily all public money in some responsible bank or banks located at the county seat, to be designated by the board of county commissioners, in the name of said treasurer as such officer, which bank shall pay such interest on average daily balances as may be agreed upon by the board of county commissioners."

Under that statute the county commissioners had continuous control over the county funds, and one board of county commissioners could not make a contract that would deprive a succeeding board of that control.

We quote from 15 C. J. 542, as follows:

"The general rule is that contracts extending beyond the term of the existing board and the employment of agents or servants of the county for such a period, thus tying the hands of the succeeding board and depriving the latter of their proper powers, are void as contrary to public policy."

Decisions from eight states, including Kansas, are there cited to support that rule.

The defendants, in support of their contention, cite cases involving the power of cities to make waterworks contracts running over a term of years. Those cases are not persuasive in the present action because there the cities were specifically empowered to make contracts for furnishing water, running over a period of years. In

the present action no specific authority to make a contract over a period of years is given.

Section 48-308 of the Revised Statutes specifically gives to the board of county commissioners authority to donate the use of lands or buildings or to contribute money for equipment and maintenance for national guard organizations. The succeeding section gives authority to a board of county commissioners to make annual expenditures not exceeding $2,000 for furnishing equipment and maintenance to a national guard organization. The annual payment of $2,000 is an annual expenditure within the control of the board. Being an annual expenditure, it is within the control of each succeeding board of county commissioners, which may or may not make the payment as in its judgment seems best. It follows that the board of county commissioners cannot lawfully make the contract questioned by the state in the present action.

Judgment is rendered for the plaintiff, and the defendants are ousted from entering into the contract described in the petition of the plaintiff.